
CHAPMAN ASSOCIATES
Mergers & Acquisitions

**PH**     **08 C 32**

# EXCLUSIVE LISTING AGREEMENT

Kevin Signor ("Seller") with the principal mailing address at 4701 South Deer Run Norfolk, NE 68701 hereby grant(s) Chapman Merger and Acquisitions Services, Inc. ("Chapman") the exclusive right to sell: Signor Trucking, Inc. ("Business"), with its principal address at 1304 Tahazouka, Norfolk, NE 68701, for a period of 365 days from the date of this agreement. The Asking Price shall be $4,500,000 for 100% of the assets free and clear; or on such other terms as are acceptable to Seller.

**JUDGE SHADUR**
**MAGISTRATE JUDGE NOLAN**

## SELLER AGREES

1. Seller agrees that the effort to sell the Business is a collaborative process between the Seller and Chapman and agrees to reasonably cooperate with Chapman in effecting the sale of the Business. Such cooperation shall include providing Chapman with information and documentation on a timely basis and making themselves and the Business reasonably available to representatives of Chapman and potential purchasers for the Business.
2. Seller agrees to provide Chapman written notification within ten (10) business days of any material changes in the Business including but not limited to litigation, debt restructure, tax status, audits, accounting, environmental issues, major account and/or vendor changes, etc.
3. Seller agrees to refer all inquiries regarding the sale of the Business to Chapman during the term of this agreement.
4. Seller agrees not to do business with a party covered by this agreement unless Seller compensates Chapman per the commission schedule for any consideration received from a purchaser regardless of the nature or form of that transaction or business relationship. Seller agrees that the minimum commission would be applicable in this event.
5. Seller agrees to compensate Chapman in accordance with the terms of this Agreement.
6. Seller agrees that Chapman's commission shall be due and payable in the event that Chapman delivers an offer from a buyer that meets the asking price and terms stated in this agreement and Seller rejects such offer without a commercially reasonable explanation.
7. Seller agrees that Chapman's commission shall be due and payable in the event that Seller signs an agreement to sell or lease the Business or enters into a quasi business agreement either during the term of this agreement or within 24 months of the expiration of the agreement to a purchaser solicited by Chapman under this agreement or to a purchaser that approached Seller directly or Seller or Seller's advisors approached during the term of this agreement even if Seller did not refer the inquiry to Chapman.

## CHAPMAN AGREES

Chapman hereby agrees to:
1. Assist the Seller in determining an appropriate value for the Business.
2. Assist Seller in developing various structures for the sale of the Business.
3. Analyze the Business and its industry to identify likely purchasers.
4. Develop a customized marketing program for the Business in order to solicit likely purchasers.
5. Research and prepare a marketing brochure and/or other materials to present the Business to potential purchasers.
6. Search Chapman's proprietary database of active buyers to identify potential purchasers for the Business.
7. Solicit these potential purchasers on the Seller's behalf.
8. Promote the Business in an anonymous fashion to protect the identity of the Business and the Seller.
9. Inform our regional offices about this acquisition opportunity so that they may contact potential purchasers.
10. Assist Seller in structuring and closing the sale of the Business once a purchaser has been identified.

Chapman Merger and Acquisitions Services, Inc. © 2004 • 16 E. Schaumburg Rd., Ste. 104, Schaumburg, IL 60194-3536 • (847) 490-0225 • FAX (847) 824-0053

Exhibit A



## COMMISSION

1. Chapman's commission will be determined in accordance with the following schedule and will be based on the Total Consideration paid for the Business. Total Consideration means the purchase price for the Business and includes all consideration payable by a purchaser, whether in cash, promissory notes, shares of the purchaser or assumed obligations of the Business, whether for the purchase of stock or assets, and includes the value of any earn outs, covenants, consulting, employment, non-compete, royalty, lease or other agreements that provide value to the Seller. In the case of the sale of stock, total consideration includes all of the liabilities of the Business. In the event that the Seller or a related entity personally owns any of the assets included in the sale of the Business, the consideration paid for these assets shall be included in the definition of Total Consideration. In the event that additional assets and/or entities with common or related ownership are purchased or leased they would also be included in the Total Consideration.
2. Chapman's commission shall be calculated as follows:

   6% of the first FIVE MILLION U.S. Dollars ($5,000,000) in Total Consideration, and

   3% of the next FIVE MILLION U.S. Dollars ($5,000,000) in Total Consideration, and

   1% of the balance over TEN MILLION U.S. Dollars ($10,000,000) in Total Consideration.

3. Regardless of the amount of Total Consideration paid for the Business, Chapman and Seller agree that the minimum commission due Chapman shall be $150,000 USD.
4. Chapman's commission is due and payable in cash, by wire, concurrently with the closing of the sale of the Business or Buyer takes over the business, whichever occurs first. All sums should be paid to Chapman Merger and Acquisitions Services, Inc.
5. Forfeited option or earnest money paid by prospective purchaser shall be divided equally between Chapman and Seller.

## AGREED TO TERMS

1. A sale of the Business is defined as the sale, lease or other disposition of all or any material part of the assets of the Business or of Seller's equity in the Business or assumption of control of the business to any purchaser including without limitation co-owners, managers, insiders, employees, affiliates, family members and ESOPs. A commission shall also be due in the event that the Seller enters into a quasi-sale type transaction, including without limitation, joint ventures, partnerships, lease, debt or equity financing, strategic alliances, etc, with a party covered by this agreement.
2. Chapman makes no representations about a purchaser's qualifications or ability to purchase or successfully operate the Business. Seller agrees to make an independent investigation of the purchaser's qualifications and abilities.
3. The marketing materials prepared by Chapman regarding the Business remain the property of Chapman and may not be used or reproduced without our written permission.
4. Seller agrees to name Chapman as the broker of record in any contract of sale between the Seller and purchaser.
5. Seller shall provide Chapman with copies of all correspondence and documents relating to the sale of the business as received. Seller shall instruct its advisors to provide Chapman with copies of all documents relating to the sale of the Business at the same time that they are provided to Seller.
6. Seller warrants that all information provided to Chapman regarding the Business is true and complete to the best of Seller's knowledge and may be relied upon by Chapman and prospective purchasers. Seller agrees to indemnify and hold Chapman harmless for any claim, loss or damage arising from or related to this agreement, including but not limited to a) the expense of defending an action for incorrect or misleading information regarding the Business received from Seller, and b) Seller's failure to disclose material facts regarding the Business.
7. Seller will not disclose to third parties a purchaser's identity or intent to purchase the Business or any other business, except for professional advisors involved in sale and advised to keep confidential.
8. In the event that Chapman takes legal action to recover its fees or commission, Seller agrees to pay all costs of collection including reasonable attorney's fees. Seller consents to personal jurisdiction and venue in the state and federal courts located in Chicago, Cook County, Illinois. This Agreement shall be construed in accordance with the laws of the State of Illinois.
9. Seller agrees to permit Chapman, after closing, to disclose in Chapman's marketing materials Chapman's role in representing the Business and Seller.
10. If any part of this Agreement is unenforceable, the remaining provisions shall be enforced without respect to the unenforceable provision.
11. The undersigned parties represent that each signatory is duly empowered by the shareholders of 100% of the issued and outstanding

Chapman Merger and Acquisitions Services, Inc. © 2004 • 16 E. Schaumburg Rd., Ste. 104, Schaumburg, IL. 60194-3536 • (847) 490-0225 • FAX (847) 884-0053




**CHAPMAN ASSOCIATES**
Mergers & Acquisitions

stock of the Business to execute this exclusive authorization to sell the Business.
12. This document constitutes the entire Agreement between the parties and no modifications will be effective unless made in writing and signed by a duly authorized signatory of both parties.
13. Chapman will not disclose Seller's identity without Seller's approval and will confirm such in writing.

**AGREED TO BY SELLER:**

_____    _President_    _7-31-07_
Kevin Signor, Individually and Corporately    Title: President    Date:

**AGREED TO BY: CHAPMAN MERGER AND ACQUISITIONS SERVICES, INC.**

_____    _Pres_    _8/1/07_
Joe W. Denny                 Title: President    Date:

Exhibit A